# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                                Case No. 04-CR-34

ARTHUR L. SCHUH,
THOMAS A. SCHUH,
SHOKEE A. CLEVELAND, and
EDWARD J. FITZGERALD,

        Defendants.

---

## RECOMMENDATION AND ORDER RE: DEFENDANTS' PRETRIAL MOTIONS

---

## I. BACKGROUND

On February 10, 2004, a grand jury sitting in the Eastern District of Wisconsin returned a three-count indictment, together with a forfeiture provision, naming Arthur L. Schuh ("Arthur Schuh" or "Arthur") as the defendant. Count One charges Arthur with, beginning in 2000 and continuing until at least June of 2003, conspiring with persons known and unknown to the grand jury to distribute cocaine, a controlled substance, in violation of Title 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. Count Two charges Arthur with on or about June 6, 2003, possessing cocaine with intent to distribute the same, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). Count Three charges Arthur with, on or about June 6, 2003, possessing a firearm in furtherance of the drug trafficking crime charged in Count Two of the indictment, in violation of Title 18 U.S.C. § 924(c). Arthur was not taken into custody until June 2, 2005. Thereafter, on June 16, 2005, Arthur was arraigned on the indictment and entered a not guilty plea as to all counts.

Subsequently, on June 21, 2005, the grand jury returned a three-count superseding indictment, together with a forfeiture provision. Like the original indictment, Count One charges Arthur with, beginning in 2000 and continuing until at least June of 2003, conspiring with persons known and unknown to the grand jury to distribute cocaine, a controlled substance, in violation of Title 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. However, Count One also charges Thomas A. Schuh ("Thomas Schuh" or "Thomas"), Shokee A. Cleveland ("Cleveland"), and Edward J. Fitzgerald ("Fitzgerald") with having participated in the same conspiracy. Count Two charges Arthur with, beginning in 2000 and continuing until at least June of 2003, possessing a firearm in furtherance of the drug trafficking crime charged in Count One of the indictment, in violation of Title 18 U.S.C. § 924(c). Count Three charges Arthur with, on or about June 6, 2003, possessing cocaine with intent to distribute the same, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). All of the defendants were arraigned on the superseding indictment and entered pleas of not guilty.

Thereafter, a scheduling conference was held with counsel for the defendants. At the conference, this court set a briefing schedule for any pretrial motions. In accordance with that schedule, Arthur and Thomas filed certain pretrial motions. Neither Cleveland nor Fitzgerald filed any pretrial motions.

Specifically, Arthur filed a "Motion to Suppress Wiretap Evidence on the Basis of the Monitoring Agents [Failure] to Minimize Communications Not Otherwise Subject to Interception"; a "Motion to Suppress Fruits of June 6, 2003 Search"; a "Motion for Pretrial Notice of Government's Intent to Use Evidence of Other Crimes"; a "Motion to Require Notice of Intention to Use Specific Instances of Conduct Evidence"; and a "Motion to Sever Defendants for Trial." Arthur also filed a

"Notice of Request for Proffer on Admissibility of Co-Conspirator's Statements." However, this "Notice" also states that "No Action is Requested at This Time."

Thomas filed a "Motion to Suppress Wiretap Evidence on the Basis of the Monitoring Agents [Failure] to Minimize Communications Not Otherwise Subject to Interception"; a "Motion to Sever Defendants" for trial; and a "Motion to Reveal Informant's Identity."

## II. DISCUSSION

### A. Motion to Suppress Wiretap Evidence Based on Failure to Minimize Communications

Both Arthur and Thomas Schuh filed motions to suppress all evidence obtained as a result of the wiretap in this case. Specifically, both argue that such evidence should be suppressed because the monitoring agents failed "to minimize the interceptions of communications not otherwise subject to interception, in violation of the Fourth Amendment." (Arthur's Mot. at 1; Thomas's Mot. at 1.) In connection with their motions they also requested that the court conduct an evidentiary hearing so that they might question Special Agent Timothy Gray and any other monitoring agent "about the type of minimization utilized and specific instances of minimization or the agents [sic] failure to minimize the interceptions." (Arthur's Mot. at 3; Thomas's Mot. at 4.) For the reasons which follow, their requests for an evidentiary hearing will be denied. Furthermore, it will be recommended that their motions to suppress be denied.

Minimization is required by 18 U.S.C. § 2518(5) which states, in pertinent part:

> Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in 30 days.

3

In turn, 18 U.S.C. § 2518(10)(a) provides, in pertinent part, that:

> Any aggrieved person in any trial, hearing or proceeding in or before any court . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that -
>
> . . . .
>
> (iii) the interception was not made in conformity with the order of authorization or approval.

The Supreme Court interpreted the minimization provision of Title III in *Scott v. United States*, 436 U.S. 128, 140 (1978):

> The statute does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to "minimize" the interception of such conversations. Whether the agents have in fact conducted the wiretap in such a manner will depend on the facts and circumstances of each case.

When a defendant makes a generalized minimization challenge, the government bears the burden of making a prima facie showing of reasonable compliance with the minimization requirements. *United States v. Quintana*, 508 F.2d 867, 875 (7th Cir. 1975). The burden then shifts to the defendant to show why the surveillance was improper. *Id.* The defendant must show that the minimization could have been better accomplished while still allowing the government to achieve its legitimate objectives. *Id.*

Courts have set forth numerous reasons to justify a finding of statutory compliance in the face of evidence that a significant number of non-pertinent calls were intercepted. "It has often been remarked that large and sophisticated narcotics conspiracies may justify considerably more interceptions than would a single criminal episode." *United States v.Suquet*, 547 F. Supp. 1034, 1036-37 (N.D. Ill. 1982) (citing *Quintana*, 508 F.2d at 874). The location of the tapped phone is also

4

extremely important. *Suquet*, 547 F. Supp. at 1037. A third systemic consideration is the extent of supervision exercised by the authorizing judge. "Where the judge has required and reviewed [interim] reports at frequent intervals, courts have been more willing to find a good-faith attempt to minimize unnecessary interceptions." *Quintana*, 508 F.2d at 875. Obviously, a reviewing court is more likely to sanction a surveillance if it has already been subjected to extensive and contemporaneous oversight. *Suquet*, 547 F. Supp. at 1037.

As for particular calls, several types are essentially exempted from the requirements of minimization. These include calls which are "very short"; those which are "one-time only" and involve unidentified voices; and, those which are "ambiguous in nature," particularly if they contain "guarded or coded language." *Id.* (citing *Scott*, 436 U.S. at 140). Indeed, in *United States v. Dumes*, 313 F.3d 372 (7th Cir. 2002), the Seventh Circuit stated that, "[f]ollowing *Scott*, some courts have held that calls of less than 2 minutes do not require minimization. *See United States Malekzadeh*, 855 F.2d 1492 (11th Cir. 1988); *United States v. Apodaca*, 820 F.2d 348 (10th Cir. 1987). We certainly agree that minimization of short calls is not required." *Dumes*, 313 F.3d at 380.

Moreover, in order to determine whether the government properly minimized interceptions of conversations, a test of reasonableness is applied to the particular facts of each case. *Scott,* 436 U.S. at 139. Absent "an unreasonable" intrusion, neither Title III nor the Fourth Amendment are violated. *United States v. Dorfman*, 542 F. Supp. 345, 390 (N.D. Ill. 1982). To establish an unreasonable intrusion, a defendant must do more than identify particular calls which he contends should not have been intercepted. Rather, he must establish a pattern of interception of innocent conversations which developed over the period of the wiretap. *Id*. at 391. The obligation to minimize only requires that the government agents exercise good faith, reasonable efforts to

5

minimize. Where a good faith effort has been made, the overall interception is valid, even though some non-pertinent calls are monitored. *See United States v. Falcone*, 364 F. Supp. 877, 885 (D.N.J. 1973). Indeed, "perfection is not usually attainable, and is certainly not legally required." Instead, the "government is held to a standard of honest effort." *United States v. Cleveland*, 964 F. Supp. 1073, 1092 (E.D. La. 1997).

> The court in *Scott* observed as follows:

> The type of use to which the telephone is normally put may also have some bearing on the extent to minimization required. For example, if the agents are permitted to tap a telephone because one individual is thought to be placing bets over the phone, substantial doubts as to minimization may arise if the agents listen to every call which goes out over that phone regardless of who places the call. On the other hand, if the phone is located in the residence of a person who is thought to be the head of a major drug ring, a contrary conclusion may be indicated.

*Scott*, 436 U.S. at 140. More recently, in *United States v. Mansoori*, 304 F.3d 635 (7th Cir. 2002), the court had the following to say with respect to factors to be considered in determining whether the government's minimization efforts are sufficient.

> Although the adequacy of the government's minimization efforts necessarily depends on the facts of each case, relevant considerations include the kind and scope of criminal enterprise that the government was investigating, the thoroughness of the government's efforts to ensure that nonpertinent calls will be minimized, the extent to which the government could have foreseen that certain types of conversations would be innocuous and thus subject to minimization, use of code, and the extent to which the authorizing judge oversaw the interception efforts.

*Mansoori*, 304 F.3d at 647. Furthermore, the *Mansoori* court reiterated that "[a] number of other courts have found that two to three minutes is a reasonable period of time within which to make an initial judgment as to the pertinence of a conversation." *Id*. Finally, the court observed that even if the defendants were to prevail on their challenge, "the appropriate relief likely would be to suppress any conversation or conversations that were inappropriately monitored." *Id*. at 648. This is because

6

wholesale suppression of all intercepted conversations is reserved for the "particularly horrendous

case." *Id*. at 648 (citing *United States v. Charles*, 213 F.3d 10, 22 (1st Cir. 2000)).

In support of their motions the defendants argue that

from the 10-day reports of the intercept log for phone number [414] 736-0899
(discovery pages 114-159), the intercept investigators intercepted 862 calls. Only 19
calls were minimized. That is only 2.2% of the calls that were minimized by the
intercept investigators.

(Thomas's Mot. at 2.) But the significance of the defendants' statistical presentation is gutted by the

government in its written submission. More particularly, the government asserts and argues as

follows:

The defendants note that out of 862 calls intercepted, only 18 [sic] were
minimized. However, the defendants fail to point out that of those 862 calls, 834 of
them were under two minutes. Of the 28 calls over 2 minutes, 19 were minimized.
Generally, monitors are authorized to listen for 2 minutes before minimization is
required for a call deemed non-pertinent. *See Monsoori, supra*. The minimization
rate of calls over 2 minutes was at an impressive rate of 67%. The defendants make
absolutely no effort to discuss the 9 calls which ran over two minutes which were not
minimized. Indeed, the defendants would be hard-pressed to demonstrate a pattern
of non-minimization in the face of these statistics.

(Gov't Mem. at 6-7.) I agree with the government. In the face of such statistics, there is simply

no conceivable set of circumstances under which the defendants could successfully argue that the

minimization efforts taken in this case were so "horrendous" that wholesale suppression of all

intercepted conversations is warranted. Given that no amount of questioning of the monitoring

agents "about the type of minimization utilized and specific instances of minimization or the agents

[sic] failure to minimize the interceptions" is going to change those raw statistics, there is no need

to conduct an evidentiary hearing on the defendants' motions.

7

Indeed, it is worth noting that the only telephone call about which the defendants specifically complain is one in which neither of them were even participants. Instead, it is a call which occurred on June 9, 2003, between "a person named Kim and her mother." (Thomas's Mot at 2.) According to the defendants, the conversation lasted four minutes and fifty-nine seconds; it "was not minimized and arguably should have been." (Thomas's Mot. at 3.) But, even assuming *arguendo* that the conversation should have been minimized, it is doubtful that either of these defendants would have standing to seek suppression of such conversation in any event. This is because, according to the government, this particular conversation was intercepted over the telephone of co-defendant Shokee Cleveland; it was not intercepted over the telephone of either of the moving defendants.

Title 18 U.S.C. § 2518(10)(a) provides that:

> Any aggrieved person in any trial, hearing, or proceeding in or before any court, . . . may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that -
>
> (i)  the communication was unlawfully intercepted;
>
> (ii)  the order of authorization or approval under which it was intercepted is insufficient on its face; or
>
> (iii) the interception was not made in conformity with the order of authorization or approval.

In turn, 18 U.S.C. § 2510(11) defines "aggrieved person" as: "A person who was a party to any intercepted wire, oral, or electronic communication, or a person against whom the interception was directed." Case law has further defined those persons who have standing to challenge the admissibility of intercepted communications. Specifically, the United States Supreme Court in *Alderman v. United States*, 394 U.S. 165 (1969), ruled that the term "aggrieved person" as used in

8

18 U.S.C. § 2518(10) should be construed in accordance with the rules of standing under the Fourth Amendment. *Alderman*, 394 U.S. at 175 n 9. The court held that,

> any petitioner would be entitled to the suppression of government evidence originating in electronic surveillance violative of his own Fourth Amendment right to be free of unreasonable searches and seizures. Such violation would occur if the United States unlawfully overhead conversations of a petitioner himself or conversations occurring on his premises, whether or not he was present or participated in those conversations.

*Id.* at 176.

Stated another way, "when objecting to the introduction of a given call X, a defendant must show that he or she was a party to call X or that he or she has a privacy interest in the premises housing the tapped phone." *Suquet,* 547 F.Supp. at 1038. Simply stated, neither Arthur nor Thomas would likely have "standing" to object to any alleged failure to minimize this particular conversation.

In conclusion, the defendants in this case have not demonstrated there to have been a pattern of interception of innocent conversations which developed over a period of the wiretap. *Dorfman*, 542 F. Supp. at 391. Nor would an evidentiary hearing demonstrate such to be the case. Consequently, the defendants' request for an evidentiary hearing will be denied. Furthermore, to the extent that the defendants' motions to suppress evidence obtained by way of the intercept order is predicated on the claim that the government did not properly minimize the interceptions, it will be recommended that their motions to suppress be denied.

## B. Motion to Suppress Fruits of June 6, 2003 Search

Defendant Arthur Schuh has filed a motion to suppress "all evidence seized and obtained as a result of the June 6, 2003 search of his premises at N3906 Black Hawk Road, Pine River, Waushara

9

County, Wisconsin." (Mot. at 1.) According to Arthur, agents had been eavesdropping on conversations pursuant to a wiretap, which had been ordered by the Milwaukee County Circuit Court. On the days leading up to the search of June 6, 2003, "a number of telephone conversations were overheard allegedly referring to drug sales in the guise of 'fish' being 'fried' or 'hard.'" ( Mot. at 2.) The conversations also suggested that the target of the wiretap, Shokee Cleveland would be driving north "under vague circumstances, ostensibly engaged in drug deals. Just as clearly, Arthur Schuh was overheard speaking with someone named 'Ed.' Arthur Schuh indicates he was in no hurry to meet with anyone." (Mot. at 2.)

Based on the overheard conversations, application was made for an anticipatory search warrant, which requested that the warrant be authorized "'only if law enforcement officials are able to observe, monitor, or otherwise receive reliable information of, a person traveling from Milwaukee to the cabin prior to 6:00 a.m. on June 7, 2003.'" (Mot. at 3, citing Aff. in Support of Search Warrant (Gov't's Ex. 2) at ¶ 19)

Based on the application, a search warrant was issued which, according to the defendant,

ordered a sweeping search of not only N3906 Black Hawk Road, Pine River in Waushara County, but also the garage and storage areas. Further, the court approved of a broad array of items to be seized ranging from controlled substances to notes, ledgers, currency, jewelry, photographs, phones, cell phones, lease agreements, keys, police scanners, etc.

(Mot. at 3.) Arthur challenges the search of June 6, 2003 on the following grounds:

1. The information provided to the court was too vague and did not show probable cause justifying the search warrant.

2. There was no showing that contraband was on a "sure course" to the location to be searched.

10

3. The conditions governing the conditions of the search warrant were not explicit, clear and narrowly drawn as required by law; rather, they were vague and broad. Nothing in the information provided to the Circuit Court justified the depth and breadth and sweep of the warrant.

(Mot. at 3.)

The duty of court that is reviewing the issuance of a search warrant is simply to ensure that the court which issued the warrant had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). Probable cause is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id*. at 238. Probable cause exists when it is reasonably believed that the evidence sought will aid in the prosecution of a particular offense and the evidence is located in the place to be searched. *See United States v. Lloyd,* 71 F.3d 1256, 1263 (7th Cir. 1995); *United States v. Ellery,* 678 F.2d 674, 677 (7th Cir. 1982); *United States v. Anton,* 633 F.2d 1252, 1254 (7th Cir. 1980). "Probable cause denotes more than mere suspicion, but does not require certainty." *United States v. McNeese,* 901 F.2d 585, 592 (7th Cir. 1990) (quoting *Ellery*, 678 F.2d at 677.) "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *United States v. Kimberlin,* 805 F.2d 210, 228 (7th Cir. 1986) (quoting *Brinegar v. United States,* 338 U.S. 160, 175 (1949)).

Probable cause is a fluid concept turning on the assessment of probabilities in a particular factual context. "Rather than viewing bits and pieces of a probable cause showing in isolation, the court must focus on all the facts presented to the magistrate." *United States v. Markling*, 7 F.3d 1309, 1317 (7th Cir. 1993). A search warrant may issue even in the absence of direct evidence

11

linking criminal objects to a particular site. *United States v. Sleet*, 54 F.3d 303, 306 (7th Cir. 1995). "The [judicial officer] to whom the warrant application is directed 'is entitled to draw reasonable inferences about where evidence is likely to be kept based on the nature of the evidence and the type of offense,' and the [judicial officer] 'need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.'" *Id*. (quoting *United Sates v. Malin*, 908 F.2d 163, 166 (7th Cir. 1990)).

A judicial preference is to be accorded warrants in those cases where there is a close or marginal showing of probable cause. In reviewing prior probable cause findings made by a judicial officer in issuing a warrant, "great deference" is to be accorded to that determination. *United States v. Leon*, 468 U.S. 897, 914 (1984). The duty of the reviewing court is simply to ensure that the judicial officer issuing the warrant had a substantial basis for concluding that, under the totality of the circumstances, probable cause existed to believe the contraband or evidence of the crime sought will be found in a particular place. *Gates*, 462 U.S. at 236. The Seventh Circuit has held that the standard of review of a determination that probable cause exists supporting issuance of a search warrant is "one of affirmance absent clear error by the issuing magistrate." *United States v. Pless*, 982 F.2d 1118, 1124 (7th Cir. 1992).

That this was an anticipatory search warrant does not alter the core principles of review. Indeed, the legality of such warrants is governed by the same principles of probable cause that govern all search warrants. *See United States v. Leidner*, 99 F.3d 1423, 1427 (7th Cir. 1996). "An anticipatory warrant must be supported by probable cause 'to believe that contraband will be located at the premises to be searched after certain events transpire.'" *United States v. Brack*, 188 F.3d 748, 755 (7th Cir. 1999) (quoting *United States v. Dennis*, 115 F.3d 524, 528 (7th Cir. 1997)). There are

12

however three requirements for an anticipatory warrant: (1) that the affidavit present independent evidence that gives rise to probable cause to believe that the contraband will be located at the premises at the time of the search; (2) that the contraband be on a "sure course" to the location to be searched; and (3) that the conditions governing the execution of the warrant be explicit, clear, and narrowly drawn. *Id*. at 757.

Applying the above principles to the search warrant issued in this case leads me to conclude that there was sufficient basis for the issuing judicial officer to find probable cause for the issuance of the anticipatory search warrant. To begin, the affidavits which were filed in support of the issuance (and extension) of the wiretap (which were then incorporated into the application for the anticipatory search warrant) lay out clearly a factual basis to believe that Shokee Cleveland was a distributor of controlled substances and that Arthur Schuh was one of his regular customers.

More particularly, according to a government informant ("DDI 4169"), during the 18 months prior to the informant's arrest in 2002, the informant sold cocaine to Shokee Cleveland. Cleveland told DDI 4169 that he sold most of his cocaine to a white attorney named "Art"who lives near Fond du Lac; that Cleveland went into the woods to Art's cabin; and that Cleveland usually paid a third party to drive him there. (*See* Gov't's Ex. 3 (Gray Aff. of April 29, 2003) at 12-17, ¶¶ 11A - 11F.)

Another government informant ("DDI 4141") told police that Cleveland told him that Cleveland distributes to an older white guy named "Art" who lives near Fond du Lac and who is an attorney. Cleveland also told DDI 4141 that Art owns a cabin in the woods in a little hick town and that Cleveland normally takes the cocaine to Art's cabin. Cleveland also told DDI 4141 that Art sells most of the cocaine, but also smokes some of it. (Gov't's Ex. 3 at 18-20, ¶¶ 12A-12B.)

13

Based on the foregoing (as well as other) information, a court order authorizing a wiretap of Cleveland's cell phone was entered on or shortly after April 29, 2003. On or about May 28, 2003, that authorization was extended by court order. Finally, on or about May 28, 2003, the court issued an order authorizing a wiretap of Cleveland's home (land-line) telephone. As a result of these wiretap authorizations, the contents of numerous intercepted telephone conversations confirmed that Cleveland was a supplier of cocaine to Arthur Schuh and Thomas Schuh.

As the government recounts summarily in its Response,

> Based upon telephone toll records, police were able to corroborate the information provided by the DDIs, and establish that the Art who connected to Cleveland over the telephone was Arthur Schuh, and that the telephone number Schuh used to communicate with Cleveland was a number that listed to Arthur Schuh at the cabin at N3906 Blackhawk Road in Pine River, Wisconsin. This residence is the subject of the search warrant. Independent police investigation revealed that this residence is in fact a cabin in the woods in Pine River. Pine River is in the general vicinity of FondduLac.

> The affidavit in support of the search warrant further recites the content of numerous telephone calls monitored over the telephone used by Shokee Cleveland. On May 16, 2003, a call was monitored wherein Ed (using Cleveland's telephone) spoke to Thomas Schuh, the brother of Arthur Schuh. During this call, Ed and Thomas Schuh discussed fish fillets (cocaine), and whether it was cooked (crack cocaine) or raw powder (powder cocaine). When Ed indicated the fish was raw, Thomas Schuh told him that Art did not want that, and they were going to pass on it.

> The affidavit recited another monitored call on May 21, 2003 wherein Thomas Schuh said, "tonight in the woods, by dark." About an hour later, Arthur Schuh called Cleveland and asked when Cleveland could leave. Cleveland said he was not sure he wanted to come, and they argued. Arthur Schuh told Cleveland he was in the woods. Shortly thereafter, Cleveland told Kim that he has to go up north with Ed and he'll be back in a couple of hours. Officers monitored Cleveland drive from Milwaukee to Schuh's cabin in Pine River.

> On June 3, 2003, there was a call monitored between Cleveland and Ed. Cleveland asked Ed what he had going on up north. Ed told Cleveland that Thomas Schuh told him that Cleveland would be "fronting it" (meaning selling drugs on credit). Cleveland said he finally has it in his hand, that he just got it (the drugs).

Case 1:04-cr-00034-WCG   Filed 12/20/05   Page 14 of 30   Document 61

On June 4, 2003, there was a call monitored between Cleveland and Thomas Schuh. Cleveland said, "everything gonna be cool with me and you this week" and that "I'm just waiting on your brother, as soon as he calls and lets me know he's ready to go, I'll come up there and one bunch, because I'm trying to drop Patty off too." Later, Ed (using Cleveland's phone) called Arthur Schuh and asked if he wanted to do it now instead of the weekend, and Schuh said no, he was "still fine and will be fine."

On June 5, 2003, a caller from the 920 area code (in the Fox Valley) contacted Cleveland, and Cleveland said he would be coming up tomorrow night (June 6, 2003). The caller, who identified himself as Mike, said he would like to get "1" (a quantity of narcotics).

On June 6, 2003, at 11:41 a.m., a call was monitored between Cleveland and Ed. Ed told Cleveland he talked to everyone and that Art was at the cabin waiting. Cleveland told Ed to get ready, and that Cleveland would be over to get him.

The affidavit concludes that the agent believes, based on the foregoing, and the past history, that a delivery of drugs to the cabin of Arthur Schuh will occur within the next several hours.

(Gov't's Resp. at 5-7.) (citations omitted)

As previously stated, the Seventh Circuit has held that the standard of review of a determination that probable cause exists supporting issuance of a search warrant is "one of affirmance absent clear error by the issuing magistrate." *Pless*, 982 F.2d at 1124. Simply stated, the state court judge's determination that the foregoing information provided probable cause to believe that Arthur Schuh was a drug customer of Cleveland and a drug distributor in his own right was not clearly erroneous. To the contrary, such determination by the state court judge was reasonable.

Furthermore, the application for the search warrant of the premises at N3906 Blackhawk Road (together with the detached garage, storage areas accessible to that premises, and vehicles on such premise) set forth reasonable cause to believe that a quantity of controlled substances was going to be delivered to those premises (i.e., Arthur Schuh's cabin) within hours of the issuance of the

15

warrant (which was at 3:07 p.m. on June 6, 2003). More particularly, the application set forth reasonable cause to believe that Cleveland, as he had previously done, would (along with Ed), be traveling to the cabin during the evening hours of June 6, 2003, to deliver a quantity of drugs to Art. In my opinion, such information as presented in the application was sufficient to satisfy the "sure course" requirement of *Brack*. Simply stated, "the totality of the circumstances," which approach is applicable to anticipatory warrants (*See Dennis*, 115 F.3d at 531), demonstrated probable cause to believe that such delivery would take place.

Indeed, Milwaukee County Circuit Court Judge Michael Skwierawski took additional steps to ensure that the "sure course" requirement would continue to be satisfied by expressly conditioning execution of the warrant as follows:

> This authorization is also contingent upon law enforcement officials observing, monitoring, or otherwise having reliable information of, an individual traveling from Milwaukee to the cabin at N3906 Blackhawk Road, Pine River, prior to 6:00 a.m. on June 7, 2003. No search may be conducted until and unless that person enters upon the premises surrounding the cabin at a time prior to 6:00 a.m. on June 7, 2003.

(Gov't's Ex. 1 (Search Warrant) at 2.) Judge Skwierawski's order in this regard set out sufficiently the conditions governing execution of the search warrant. In my opinion, these conditions were sufficiently explicit, clear, and narrowly drawn to satisfy *Brack*. Indeed, they were as explicit and clear as reasonably possible, given that when the application was submitted the agents did not know with certainty what time Cleveland and/or Ed would be leaving Milwaukee to go to the cabin and therefore what time they would be arriving at the cabin.

In sum, it is my opinion that Judge Skwierawski did not commit clear error by issuing the anticipatory warrant in this case. *See Pless*, 982 F.2d at 1124. To the contrary, in my independent opinion, there existed probable cause for the issuance of the warrant. Furthermore, probable cause

16

existed for its execution by law enforcement officers, once they observed, or had otherwise reliable information of, an individual traveling from Milwaukee to the cabin and once that person entered upon the premises surrounding the cabin (so long as such entry occurred prior to 6:00 a.m. on June 7, 2003).[1]

Finally, Arthur Schuh asserts that "[n]othing in the information provided to the Circuit Court justified the depth and breadth and sweep of the warrant." (Mot. at 3.) The moving defendant did not provide any argument in support of such bald proposition in his opening brief. Consequently, the government's response does not include any substantive argument against such assertion. In his reply, the defendant expounds a bit more (but not much more) on his assertion. Specifically, he states as follows:

> In addition, any read of the facts gleaned from the Title III material or from the informants, shows that if there were to be a delivery of drugs it would be for personal use. Even the agent signing the affidavit states, at paragraph 4, that Arthur Schuh is one of Shokee Cleveland's "customer" who he provides cocaine to on a weekly basis. This is more descriptive of an addict than of a co-conspirator. Nothing in the affidavit or evidence would justify the astonishing breadth of the warrant which includes not only the cabin but all buildings, vehicles and persons on the curtilage thereto.

(Reply at 3.) I disagree with the defendant.

First of all, even assuming that Arthur had been described as one of Shokee Cleveland's "customers," that does not therefore mean that all of the cocaine which he purchased from Cleveland was for his personal use. Even more to the point (and contrary to the defendant's assertion), there was information which gave reason to believe that Arthur was more than a mere user of cocaine. Specifically, as is set forth paragraph 12B of Agent Gray's April 29, 2003 affidavit, Cleveland told

---

[1] The defendants have not argued that the conditions precedent for the search did not in fact occur. Therefore, I assume that they did occur.

17

DDI 4141 that Art "sells most of the cocaine, but also smokes some of it." (Gov't's Ex. 3 at 19, ¶ 12B.)  Consequently, the scope of the warrant was more than reasonable.

To reiterate, probable cause is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. at 238-39.  "Probable cause denotes more than mere suspicion, but does not require certainty." *McNeese,* 901 F.2d at 592 (quoting *Ellery*, 678 F.2d at 677).   Indeed, a search warrant may issue "even in the absence of '[d]irect evidence linking criminal objects to a particular site.'" *United States v. Sleet*, 54 F.3d 303, 306 (7th Cir. 1995); *see also United States v. Malin,* 908 F.2d 163, 165 (7th Cir. 1990).  "The [judicial officer] to whom the warrant application is directed 'is entitled to draw reasonable inferences about where evidence is likely to be kept based on the nature of the evidence and the type of offense,' and the [judicial officer] 'need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.'" *Sleet*, 54 F.3d. at 306 (quoting *Malin,* 908 F.2d at 166). Applying the foregoing principles to the warrant in this case, it is certainly not unreasonable to believe that a drug dealer (including both Arthur and Cleveland) would likely have evidence of his drug dealing activities located in the vehicle he used to get to the cabin in the woods where he was going to meet his drug supplier/customer; in the garage on the premises; or in storage areas accessible to that premises. Such being the case, Judge Skwierawski did not commit clear error by issuing a warrant calling for the search of such locations. *See Pless*, 982 F.2d at 1124.  To the contrary,  it was most reasonable for him to do so.

In conclusion, and for all of the foregoing reasons, it will be recommended that defendant Arthur Schuh's motion to suppress "all evidence seized and obtained as a result of the June 6, 2003

Case 1:04-cr-00034-WCG   Filed 12/20/05   Page 18 of 30   Document 61

search of his premises at N3906 Black Hawk Road, Pine River, Waushara County, Wisconsin" be denied.

### C. Motion for Pretrial Notice of Government's Intent to Use Evidence of Other Crimes and Motion to Require Notice of Intention to Use Specific Instances of Conduct Evidence

Defendant Arthur Schuh has filed two somewhat inter-related motions: a motion for pretrial notice of the government's intent to use evidence of other crimes, pursuant to Fed. R. Evid. 404(b) and a motion to require notice of intention to use specific instances of conduct evidence, pursuant to Fed. R. Evid. 608(b).

With respect to the Rule 404(b) motion, Arthur seeks the date, time and place of the alleged bad act; the names, addresses, and dates of birth of any individual alleged to have witnessed the prior bad act; a summary and/or verbatim account of any statements alleged to have been made by the defendant relative to such bad act; a copy of any documents, police reports or other written material dealing with the alleged prior bad acts; and a statement as to why the government believes the prior bad act is admissible under Fed. R. Evid. 404(b).

With respect to the Rule 608(b) motion Arthur seeks the dates, times, places and persons involved in the alleged specific acts of misconduct; the statements of each participant in such specific acts of misconduct; and the documents which contain or evidence such specific acts of misconduct, including when the documents were prepared, who prepared the documents, and who has possession of said documents.

In response, the government states that it will give the defendants notice of any Rule 404(b) evidence at least 10 days prior to trial. Moreover, the government also states "that it intends to

introduce evidence of the flight of Arthur Schuh and Thomas Schuh and use of alias [sic] during the flight as evidence of guilt." (Gov't's Resp. at 13.)

Rule 404(b) provides in pertinent part that

upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during the trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The government has (1) agreed to provide the notice called for by Rule 404(b) at least ten days prior to trial and (2) advised the defendants of its intention to use evidence of flight and use of aliases. The government has thus provided, and has agreed to continue to provide, all the information to which Arthur and Thomas are entitled under Rule 404(b). Simply stated, Rule 404(b) does not require the government to provide the defendants with all of the particulars sought in Arthur's motion. As the Advisory Committee Notes relating to the 1991 amendment of Rule 404(b) state:

[N]o specific form of notice is required. The Committee considered and rejected a requirement that the notice satisfy the particularity requirements normally required of language used in a charging instrument . . . Instead, the Committee opted for a generalized notice provision which requires the prosecution to apprise the defense of the general nature of the evidence of extrinsic acts. The Committee does not intend that the amendment will supersede other rules of admissibility or disclosure, such as the Jencks Act, 18 U.S.C. § 3500 et. seq. nor require the prosecution to disclose directly or indirectly the names and addresses of its witnesses, something it is currently not required to do under Federal Rule of Criminal Procedure 16.

Case 1:04-cr-00034-WCG   Filed 12/20/05   Page 20 of 30   Document 61

Given the foregoing, the defendant's motion for notice of the government's intent to use evidence of other crimes, pursuant to Fed. R. Evid. 404(b), will be denied as moot.[2]

The government opposes Arthur's motion for notice of Rule 608(b) evidence, arguing that the rule does not call for providing him the information he seeks. I agree with the government. Rule 608(b) provides that specific instances of conduct which relate to a witness' character for truthfulness or untruthfulness may be inquired into during cross examination. The rule does not call for pretrial notice of such information to be provided to a defendant. Because Arthur has not demonstrated a particularized need for such information, and because the government is not required to provide such information, Arthur's motion to require notice of intention to use specific instances of conduct evidence, pursuant to Fed. R. Evid. 608(b), will be denied.

**D. Motion to Sever Defendants for Trial**

Both Arthur and Thomas Schuh have filed motions seeking severance of their respective trials from their co-defendants. In support of their motions both defendants argue that statements which are inculpatory to them were given by their co-defendants to law enforcement officers and that such statements may be introduced at trial. Therefore, a joint trial with such co-defendants risks violating their Sixth Amendment rights to confront the witnesses against them. *See Bruton v. United States*, 391 U.S. 123 (1968). ( Thomas's Mot. at 1; Arthur's Mot. at 1.)

---

[2] The notice requirement of Rule 404(b) also extends to evidence the government plans to use during cross-examination and for rebuttal. Fed. R. Evid. 404(b) Advisory Committee Notes; *see also United States v. Mathews*, 20 F.3d 538, 551 (2d Cir. 1994); *United States v. Antonelli*, No. 97 CR 194, 1998 WL 259526, at *1 (N.D. Ill. May 13, 1998). Thus, the government is cautioned that if, in the future, it concludes that it will attempt to introduce any evidence against the defendants pursuant to Rule 404(b), whether during its case-in-chief, for impeachment, or for possible rebuttal, it "shall provide reasonable notice in advance of trial." Fed. R. Evid. 404(b).

In its response, the government makes clear that, to the extent the moving defendants' motions are predicated on the concern that they will not be afforded the right to confront either co-defendant Shokee Cleveland or co-defendant Edward Fitzgerald, those concerns can be put to rest. This is because "[t]he government is advised that Cleveland will not proceed to trial, but instead will testify as a prosecution witness in the case against Arthur Schuh. Therefore, there will be no *Bruton* issue in this case, as Cleveland will be subject to cross-examination by Arthur Schuh." (Gov't Resp. at 1.) Moreover, "the government is advised that Cleveland and Fitzgerald will not proceed to trial, but instead will testify as prosecution witnesses in the case against Thomas Schuh. Therefore, there will be no *Bruton* issues in this case, as Cleveland and Fitzgerald will be subject to cross-examination by Thomas Schuh." (Gov't Resp. at 1-2.)

Furthermore, the government asserts that the only statements of Arthur Schuh that it will offer against Thomas Schuh are those which were intercepted over the wiretap. And according to the government, "[t]hese statements are admissible against Thomas Schuh, to the any [sic] extent that they might implicate Thomas Schuh, as a statement of a co-conspirator made in the course of and in furtherance of the conspiracy. See F[ed]. R. Evid. 801(d)(2)(E)." (Gov't Resp. at 2.)

In his reply, Thomas argues that, while his Sixth Amendment concerns about Cleveland and Fitzgerald have been alleviated by the government's assertion, he nevertheless maintains that his trial must be severed from that of Arthur's.

> Although the government states that it does not intend to offer any confession or admissions by Arthur Schuh that implicate Thomas Schuh, it is too early in the proceedings to speculate as to whether such admissions might be available to the government at the time of trial. No trial date has been set, and defense counsel is unaware of any plea negotiations among the parties. But defense counsel submits that there is a strong possibility that one or both of the Schuhs might offer a statement implicating the other between now and the time of trial. Thomas Schuh argues that

22

the economy of all parties is best served by severing the trial now, rather than at the last hour.

(Thomas's Reply at 1-2.)  Simply stated, Thomas has not offered any justifiable reason for ordering at this time that his trial be severed from Arthur's trial.  If in the future Arthur gives a statement to law enforcement officers which the government seeks to introduce against Arthur and in that statement Arthur implicates Thomas, Judge Griesbach can order separate trials.  But, we are not at that point.  To order separate trials on such speculative grounds at this time is unwarranted.

In his reply Arthur concedes that "[i]f defendants Cleveland and Fitzgerald do not proceed to trial, the motion to sever them is moot."  (Arthur's Reply at 1.)  Arthur adds, however, that "should negotiations with them fall through, Defendant Arthur Schuh would renew his motions to sever."  (Arthur's Reply at 1.)

Arthur persists in seeking a trial separate from that of Thomas if a pretrial *Santiago* hearing fails to demonstrate the admissibility of Thomas's statements against Arthur under the co-conspirator exception to the hearsay rule.  Fed. R. Evid. 801(d)(2)(E).  To be sure, if the district court were to rule that Thomas's out-of-court statements are not admissible against Arthur under Rule 801(d)(2)(E), Thomas might be entitled to a separate trial. However, as discussed below, the timing and manner of conducting a *Santiago* hearing in Arthur's case will be left entirely up to Judge Griesbach.

In conclusion, and for all of the foregoing reasons, Arthur's and Thomas's motions for severance will be denied, without prejudice, in part on the merits and in part as moot.

Case 1:04-cr-00034-WCG   Filed 12/20/05   Page 23 of 30   Document 61

**E. Motion to Reveal Informant's Identity**

Thomas Schuh has filed a motion compelling the government to reveal "the identities of all confidential informants it used in this case." (Thomas's Mot. at 1.) In support of such motion, Thomas asserts that "[h]ere, at least one confidential informant indicates that the informant observed Thomas Schuh distribute cocaine. The informant is therefore a transactional witness and his or her identity is necessary for the defendant to assess bias and veracity in preparation for trial." (Thomas's Mot. at 2.)

In response, the government acknowledges that the government must disclose an informant's identity when the informant is a transactional witness. *Rovario v. United States*, 353 U.S. 53 (1957); *United States v. Andrus*, 775 F.2d 825, 841-42 (7th Cir. 1985). To that end, it agrees to reveal the identity of any and all confidential informants who will be called to testify at trial at least 10 days prior to trial. However, the government indicates that it will not be disclosing the identity of one confidential informant (hereinafter referenced as "the CI"), even though it acknowledges that the CI observed Thomas Schuh distribute cocaine. This is because "Thomas Schuh has not been charged with a substantive distribution offense. Therefore, if the government does not call this informant at trial, there will be no need to assess the bias or veracity of the witness and disclosure is not required." (Gov't's Resp. at 14.)

The government objects to the disclosure of the CI, citing *Roviaro*. In *Roviaro*, the Supreme Court held that where an informant is a transactional witness, that is, where he or she was an active participant in the events leading to an arrest, the government must disclose the informant's identity to the defendant. *See Roviaro*, 353 U.S. at 60. However, it is well established that the government has a limited privilege to withhold from disclosure the identity of a confidential informant. *Id.*

24

The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

*Id.* at 59.

Therefore, when determining whether to compel disclosure of an informant's identity, courts must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id.* at 62. The government's limited privilege of withholding the identity of an informant gives way once the defendant proves that the information sought would significantly aid in the preparation of his defense. *Andrus*, 775 F.2d at 841-42. Absent such a showing, disclosure is not required. *Id.*

Oftentimes, the government seeks to maintain the anonymity of an informant out of a concern for his or her safety. This is especially true where the defendants have been charged with a drug-related offense. As the Court of Appeals for the Seventh Circuit noted in *United States v. Bender*, 5 F.3d 267, 270 (7th Cir. 1993):

Understandably, not many people want to become police informants in light of the violence within the drug subculture. Drug dealers are not known for treating informers with compassion.

The Court of Appeals for the Seventh Circuit has also held that where an informer is a "mere tipster," disclosure of his identity will rarely be appropriate under the balancing test of *Roviaro*. *See United States v. Lewis*, 671 F.2d 1025, 1027 (7th Cir. 1982); *United States v. Mayomi*, 873 F.2d 1049, 1055 (7th Cir. 1989). This is so, because, although tipsters supply law enforcement officers with important leads, they are rarely further involved in the investigation, apprehension or prosecution of the suspect.

Case 1:04-cr-00034-WCG   Filed 12/20/05   Page 25 of 30   Document 61

In the end, the government argues that "the defendant has made absolutely no showing as to how revelation of the informant(s) identity could be material to his defense. As such, disclosure should be denied at this time." (Gov't's Resp. at 16.).

The position that the government has taken with respect to the disclosure of the CI's identity is somewhat problematic. On the one hand, the government seems to be saying that the CI was a witness to a drug transaction, and therefore is a transactional witness. On the other hand, the government seems to be saying that there is nevertheless no need to reveal the identity of the CI because such particular drug transaction is not charged as a substantive offense. Rather, Thomas Schuh is only charged with conspiracy.

That Thomas is only charged with conspiracy does not necessarily render the CI something less than a transactional witness. To be sure, when the informant is a mere tipster, his or her identity need not be disclosed, absent the defendant's showing that maintaining the secrecy of the identity of the informant is outweighed by the defendant's right to a fair trial. "When the informant is a mere 'tipster,' *rather than a participant or an eye witness to the event in question*, disclosure will not be required." *Andrus*, 775 F.2d at 842 (emphasis added). But, in this case, the government has acknowledged that the one informant whose identity it seeks to maintain confidential *was* more than a tipster. Indeed, by the government's own admission, the CI was a participant or eye witness to the event, at least to the extent that the government intends to offer evidence at trial concerning the drug transaction to which the CI was a witness. Such being the case, if the government intends to offer evidence at trial concerning the event(s) to which the CI was a participant or eye witness, the government will be ordered to reveal the identity of the CI no later than 10 days prior to trial.

In sum, defendant Thomas Schuh's motion to reveal informants' identities will be granted in part and denied in part as moot. It will be granted in so far as the government will be ordered to reveal the identity of the CI no later than 10 days prior to trial, if the government intends to offer evidence at trial concerning the event(s) in which the CI was a participant or to which the CI was an eyewitness. It will be denied as moot in so far as the government has agreed to reveal the identities of any and all confidential informants who will be called to testify at trial at least 10 days prior to trial.[3]

## F. Notice of Request for Proffer on Admissibility of Co-Conspirator's Statements

Defendant Arthur Schuh has filed a "Notice of Request for Proffer on Admissibility of Co-Conspirator's Statements." More precisely, defendant Arthur Schuh requests that the court hold a hearing "at least two weeks prior to trial to determine whether or not the statements of any of the co-conspirators listed in the indictment and any other un-indicted co-conspirators are admissible" against him. Although the "Notice" also states that "No Action is Requested at This Time," I will nevertheless discuss the issue presented by the defendant's request.

Statements of co-conspirators are admissible if the government convinces the court, as a preliminary matter and by a preponderance of the evidence, that: (1) a conspiracy existed; (2) that the defendant and declarant were members thereof; and, (3) that the proffered statements were made during the course of and in furtherance of the conspiracy. *United States v. Santiago*, 582 F.2d 1128,

_____

[3] It goes without saying, however (and consistent with this court's treatment of the disclosure of the identity of the CI), that this court construes the government's agreeing to reveal the identities of such informants to encompass all transactional witnesses, to wit, all persons (be they "confidential informants" or not) who were either participants in, or eye witnesses to, the events about which evidence is being presented by the government. *See Andrus*, 775 F.2d at 842.

1134-35 (7th Cir. 1978), *overruled on other grounds*, *Bourjaily v. United States*, 483 U.S. 171 (1987).

The Seventh Circuit has approved multiple methods by which a district court can make the necessary determination on the admissibility of co-conspirator statements. The district court may conditionally admit statements based on a pre-trial proffer by the government and subject to the court's later determination, based on evidence admitted at trial, that the government has proved by a preponderance the necessary foundational elements. *United States v. Cox*, 923 F.2d 519, 526 (7th Cir. 1991). The court might also hold a full-blown hearing on the matter, rule on each proffered statement individually during the course of the trial based on the evidence admitted up to that point, or conditionally admit the statements, even without a pre-trial proffer, subject to the government's eventual proof of the foundational elements. *Id*.

However, in *Andrus*, the court noted that "holding a full blown pretrial hearing for a decision which is not final is an inefficient means of resolving" the preliminary factual issues raised by the co-conspirator exception. *Andrus*, 775 F.2d at 837; *see also United States v. Hunt*, 272 F.3d 488, 494 (7th Cir. 2001). Thus, the trial court may "admit the [co-conspirators'] statements subject to the government's eventual proof by a preponderance of the evidence of the elements required under Rule 801(d)(2)(E)." *Id*.

In my view, defendant Arthur Schuh's request concerning the admissibility of co-conspirator statements should be addressed by Judge Griesbach at or before trial. It is the well-established practice in this district not to conduct a hearing on these matters in advance of trial. Judge Griesbach may wish to discuss Arthur's request and his procedures for resolving the same with counsel at a later date, such as at a final pretrial. For the foregoing reasons, no ruling on the merits of Arthur's request

28

for a *Santiago* hearing and/or order requiring the government to provide written proffer will be made by this court. Instead, I will defer entirely to Judge Griesbach on this issue.

## III. RECOMMENDATION AND ORDER

**NOW THEREFORE IT IS RECOMMENDED** that defendants Arthur Schuh's and Thomas Schuh's Motions to Suppress Wiretap Evidence be **DENIED**;

**IT IS FURTHER RECOMMENDED** that defendant Arthur Schuh's Motion to Suppress Fruits of the June 6, 2003 Search be **DENIED**;

**NOW THEREFORE IT IS ORDERED** that defendant Arthur Schuh's Motion for Pretrial Notice of the Government's Intent to Use Evidence of Other Crimes, pursuant to Fed. R. Evid. 404(b) be and hereby is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that defendant Arthur Schuh's Motion to Require Notice of Intention to Use Specific Instances fo Conduct Evidence, pursuant to Fed. R. Evid. 608(b) be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that defendant Arthur Schuh's and Thomas Schuh's Motions for Severance be and hereby are **DENIED IN PART AS MOOT AND DENIED IN PART, WITHOUT PREJUDICE, ON THE MERITS**;

**IT IS FURTHER ORDERED** that defendant Thomas Schuh's Motion to Reveal Informants' Identities be and hereby is **GRANTED IN PART AND DENIED IN PART AS MOOT**; the motion is granted in so far as the government is ordered to reveal the identity of the CI (as referred to in the body of this Recommendation and Order) no later than 10 days prior to trial, if the government intends to offer evidence at trial concerning the event(s) in which the CI was a participant or to which the CI was an eyewitness; it is denied as moot in so far as the government has

29

agreed to reveal the identities of any and all confidential informants who will be called to testify at trial no later than 10 days prior to trial; [4]

       **IT IS FURTHER ORDERED** that defendant Arthur Schuh's "Request for Proffer on Admissibility of Co-conspirator's Statements" be and hereby is deferred entirely to Judge Griesbach for resolution.

       Your attention is directed to 28 U.S.C. § 636(b)(1)(A) - (C), Federal Rule of Criminal Procedure 59(a) - (b), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any order or recommendation herein or part thereof may be filed within ten days of the date of service of this recommendation and order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

       **SO ORDERED** this <u>20th</u> day of December, 2005, at Milwaukee, Wisconsin.


                      <u>/s/ William E. Callahan, Jr.</u>
                      WILLIAM E. CALLAHAN, JR.
                      United States Magistrate Judge

---

[4] To reiterate what is set forth in footnote 3, it goes without saying (and consistent with this court's treatment of the disclosure of the identity of the CI), that this court construes the government's agreeing to reveal the identities of such informants to encompass <u>all</u> transactional witnesses, to wit, all persons (be they "confidential informants" or not) who were either participants in, or eye witnesses to, the events about which evidence is being presented by the government. *See Andrus*, 775 F.2d at 842.

30